Ruffin, C. J.
 

 This is a bill filed' for the purpose of setting up a deed of trust, made by the defendant Burdin to the plaintiff Fleming, in preference to a bill of sale for the same slave from Burgin to the other defendant, Perkins, upon the ground that the deed to the plaintiff was
 
 bona fide
 
 to secure just debts, and that Perkins had full knowledge of it, when he took his conveyance. The deed to the plaintiff was wade in Charleston, in South Carolina, on the 18th of
 
 *617
 
 November, 1837, and is the same on which the bill was founded in the case of
 
 Fleming and others
 
 v
 
 Burgin and others,
 
 decided at this Term. The deed of trust to the plaintiff was registered on the 20th of December, 1837, and the bill of sale to Perkins executed on-the 4th of that month. The bill states, that Perkins was fully informed of the contents and purposes of the deed to Fleming, and, with that knowledge, attested it as one of the subscribing witnesses. An answer was put in by each defendant, in which the execution and attestation of the deed as mentioned in the bill, are admitted'. But' both of the defendants explicitly and positively deny, that the deed was
 
 liona fide,
 
 or intended to secure the debt to the plaintiffs or any others that are mentioned in it, and say that it was intended as a sham only, for the purpose of deceiving the Charleston creditors of' Burgin, and inducing them to allow him to leave that plaice and return home, and that it was distinctly agreed between Bur-gin and Fleming, at the time of executing the deed, that Fleming should hold it until Burgin could escape from his creditors there ; but, upon his- reaching Burke county, that he would surrender or cancel it, without xegistering it or enforcing it.
 

 They further state, that, upon- the execution of the deed, Burgin was suffered to come to Burke, and that Perkins accompanied'him and would have brought the deed and proved it, if it had been intended that it should be registered, but that Fleming did not request him to do so, because he well knew that he had agreed not to enforce it,' and that Burgin might, notwithstanding that deed, make such sales- of his property as his interest might require. The defendant Perkins then states, that, knowing the facts as before stated, and finding that Burgin was become insolvent, whereby he, Perkins, was likely to lose several debts which Burgin owed him, and other sums-for which he was his surety, he purchased the slaves with the view of saving himself, at the price of $400, which was the full value, and which he paid on the 4th of December, 1S37, and took a bill of sale, without any intention of defeating the deed to the plaintiff.
 

 
 *618
 
 Neitherparly has proved his case to the entire satisfaction of the court. The positive denials to the answers,that the deed to Fleming was truly meant as a security for the debts named aa(j the direct averments in them, that there was an express agreement at the time for its sn-render, as soon as it should kave answered its purpose, as a blind to the creditors in Charleston, are met by the testimony of but a single witness. He is
 
 John Bright,
 
 who is one of the persons secured in the deed as a creditor, and one oí- the subscribing witnesses, who has been examined after having released. He says, that he considered it a
 
 bonajide
 
 transaction, and that Burgin stated that he intended to secure those debts in preference to all others. But, upon being asked whether the deed was not made for the express purpose of keeping off the Charleston creditors ’till Burgin could get home and make arrangements with his friends, and whether Fleming was not to give up the deed and Burgin be at liberty when he reached home, to make any disposal of his property he might think proper, he answers, “if Burgin'satisfied Fleming and Lewis, the deed was to be given up; as to the Charleston creditors, he knows nothing about them.” The The answer meets not the whole interrogatory, and is very unsatisfactory. But it, at least, raises a suspicion, not very slight, that the deed was not to operate to the full extent of its terms, but was meant as a deception to the creditors in Charleston, and only as a security for Lewis and Fleming, and not even for the witness himself. It creates a mistrust of the honesty of the deed, as not being intended to be enforced, at least in its present shape, and rather fortifies the answers. But, on the other hand, we are not satisfied with Perkins’s proof of his being a purchaser. His answer does not state in what manner the price of the slave was paid, but the impression it is calculated, to make is, that it was in debts which Burgin owed him, or owed to others, and for which Perkins was bound, and which he then took on himself. But-the evidence on this point is only the testimony of a witness, that Burgin was indebted to the other defendant for several demands for services as a clerk in his store,
 
 *619
 
 for money lent, and bonds held on him in 1837, altogether amounting to about .$400. It does not appear, except by inference, which may or may not be just, that those debts formed the consideration of the sale; that the securites for them were then surrendered or released, or that Perkins undertook then to pay for Burgin any sum to any other person, on account of the purchase of the slave. We are not willing to decree, on the present state of our information on either of those points, as there is a great probability that it may be rendered more full and precise by an enquiry, as between the plaintiffs and the defendant Perkins, as to the real purpose of the deed to the plaintiff, .and as to the consideration of the defendant’s purchase, and in making those enquiries, the Master shall be at liberty to examine the defendant, Benjamin Burgin, Jun., at the instance of either of the parties, and also any other witnesses who may be produced on either side.
 

 Per Curiam. "Reference ordered accordingly.